C. Tom Arkoosh, ISB No. 2253
ARKOOSH LAW OFFICES
802 W. Bannock St., 9th Floor
P.O. Box 2900
Boise, ID 83701
Telephone: (208) 343-5105
Facsimile: (208) 343-5456

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOODOO RESOURCES, LLC, an Idaho limited liability company; and BRENT THOMSON, as trustee of the BRENT THOMSON FAMILY TRUST, independently and derivatively for IDAHO INDUSTRIAL MINERALS, LLC, an Idaho limited liability company, | Case No. __1:14-cv-78__ |
| | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| I-MINERALS, INC., a Canadian federal corporation; I-MINERALS USA, INC., an Idaho corporation, independently and as the alter ego of I-MINERALS, INC.; ALLEN BALL, an individual and Director of I-MINERALS, INC., and as the alter ego of BV NATURAL RESOURCES, LLC, an Idaho limited liability company and as the alter ego of BALL VENTURES, LLC, an Idaho limited liability company; BV NATURAL RESOURCES, LLC, an Idaho limited liability company; BALL VENTURES, LLC, an Idaho limited liability company; ROGER KAUFFMAN, an individual and former president of I-MINERALS, INC.; THOMAS CONWAY, an individual and president of I-MINERALS, INC.; BARRY GIRLING, an individual and director of I-MINERALS, INC.; JOHN DOES 1-10, | |
| Defendants. | |

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

COMES NOW, Plaintiffs Hoodoo Resources, LLC (hereinafter, "Hoodoo") and Brent Thomson, trustee of the Brent Thomson Family Trust, (hereinafter, "Thomson," and, collectively with Hoodoo, "Plaintiffs"), by and through their counsel of record, C. Tom Arkoosh of Arkoosh Law Offices, for a cause of action against the above named Defendants, complain and allege as follows:

## I.

## PARTIES

1.      At all times relevant to the allegations herein, Plaintiff Hoodoo is, and has been, an Idaho limited liability company doing business in the State of Idaho with its principal place of business in Boise, Idaho, and a member of Plaintiff Idaho Industrial Minerals LLC (hereinafter, "IIM"), an Idaho limited liability company.

2.      At all times relevant to the allegations herein, Plaintiff Thomson has been an Idaho resident and trustee of the Brent Thomson Family Trust. At all times relevant to the allegations herein, the Brent Thomson Family Trust has been a member of IIM.

3.      At all times relevant to the allegations herein, Plaintiff IIM has been a limited liability company organized under the laws of the state of Idaho.

4.      At all times relevant to the allegations herein, and upon information and belief, Defendant I-Minerals, Inc. (hereinafter, "I-Minerals"), is, and has been, a Canadian federal corporation with its registered office located in Vancouver, British Columbia in Canada.

5.      At all times relevant to the allegations herein, and upon information and belief, Defendant i-minerals USA, Inc. (hereinafter, "i-minerals USA"), is, and has been, an Idaho corporation, with its registered office in Hayden, Idaho.  Additionally, i-minerals USA is a

wholly owned subsidiary of I-Minerals and any reference to I-Minerals refers to both I-Minerals and i-minerals USA.

6.     At all times relevant to the allegations herein, Defendant Allen Ball (hereinafter, "Ball") was a resident of the State of Idaho. Additionally, during time periods relevant to the allegations in this lawsuit, Ball was a director of I-Minerals.

7.     At all times relevant to the allegations herein, and upon information and belief, Defendant BV Natural Resources, LLC, as the alter ego of its member Allen Ball (hereinafter, "BV Natural Resources"), has been a limited liability company organized under the laws of the state of Idaho with its principal place of business in Idaho Falls, Idaho.  Any reference to BV Natural Resources refers to both BV Natural Resources and Ball.

8.     At all times relevant to the allegations herein, and upon information and belief, Defendant Ball Ventures, LLC, as the alter ego of its member Allen Ball (hereinafter, "Ball Ventures"), has been a limited liability company organized under the laws of the state of Idaho with its principal place of business in Idaho Falls, Idaho.  Any reference to Ball Ventures refers to both Ball Ventures and Ball.

9.     At all times relevant to the allegations herein, and upon information and belief, Defendant Roger Kauffman (hereinafter, "Kauffman") was a resident of the State of Idaho. Additionally, during time periods relevant to the allegations in this lawsuit, Mr. Kauffman was the president of I-Minerals.

10.     At all times relevant to the allegations herein, and upon information and belief, Defendant Thomas Conway (hereinafter, "Conway") was a resident of the State of Utah. Additionally, during time periods relevant to the allegations in this lawsuit, Conway was the president of I-Minerals.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

11.     At all times relevant to the allegations herein, and upon information and belief, Defendant Barry Girling (hereinafter, "Girling") was a Canadian citizen. Additionally, during time periods relevant to the allegations in this lawsuit, Girling was a director of I-Minerals.

12.     Plaintiffs are unaware of the true names or capacities of the Doe Defendants sued herein as John Does 1 through 10, inclusive, and therefore sues these Does Defendants by such fictitious names.

13.     Plaintiffs will amend this complaint to allege the Doe Defendants' true names and capacities when ascertained. Plaintiffs will exercise due diligence to determine Doe Defendants' true names, capacities and contact information, and to effect service upon those Doe Defendants.

14.     Plaintiffs are informed and believe and therefore alleges that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged.

## II.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1367.

16.     Some of the claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5.  Jurisdiction is conferred by Section 27 of the Securities Exchange Act of 1934.

17.     Many of the false and misleading statements complained of herein were made by Defendants in or issued from this District.  Venue is therefore proper in this District pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa.

18.     Venue is proper pursuant also to 28 U.S.C. § 1391(b)(2).

## III.

## NATURE OF THE CASE

19.     Plaintiffs, by and through their attorneys, directly and derivatively on behalf of IIM, bring this action for breach of contract by Defendants I-Minerals and i-minerals USA; fraud in the inducement by Defendants I-Minerals, i-minerals USA, Conway, Girling and Kauffman; breach of fiduciary duties of loyalty and care by Defendant Ball; violation of Section 10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5 by all Defendants; and violation of Section 20(a) of the Securities Exchange Act of 1934 as to Defendants Ball, Conway, Girling and Kauffman.

20.     This action arises in part from the failure of I-Minerals to perform various milestones set forth in the Assignment Agreement With Contingent Right of Reverter (hereinafter, "Assignment Agreement") between IIM and I-Minerals, I-Minerals' subsequent refusal to return leases subject to IIM's right of reverter, as provided in the Assignment Agreement and I-Minerals' subsequent misrepresentations regarding the same.

21.     Prior to its breach of the Assignment Agreement, I-Minerals' president, Kauffman, and Girling, an I-Minerals board member, purposefully deceived IIM by inducing it to execute the Fourth Amendment, as defined below, to the Assignment Agreement through material misrepresentations or omissions as to I-Minerals' intention to apply for and receive a wetlands permit to enable financing and development of property that had been leased from the State of Idaho for development. Additionally, during these same negotiations, Kauffman made further material misrepresentations related to the scope and effect of the proposed amendments to the Assignment Agreement, as well as the status of the development of a water source for the project.

COMPLAINT AND DEMAND FOR JURY TRIAL - 5

22.     Upon    learning    of    I-Minerals',    Kauffman,    and    Girling's    material
misrepresentations or omissions, Plaintiffs made demand on January 15, 2013, upon Ball, the
only other voting member of IIM, to pursue IIM's right to recovery as set forth in the
Assignment Agreement.

23.     In various correspondence and meetings following Plaintiffs' January 15, 2013,
correspondence, Ball refused to vote in favor of pursuing IIM's right to recovery.

## IV.

## FACTUAL ALLEGATIONS

24.     In 1999, Phillip C. Nisbet (hereinafter, "Nisbet"), filed applications with the Idaho
Department of Lands for mineral leases on 14 state-owned properties in North Idaho.

25.     Following Nisbet's application, the Idaho Department of Lands executed mineral
leases (hereinafter, "Leases") between the State of Idaho and Nisbet for certain lands located in
Latah County, Idaho (hereinafter, "State Lands").

26.     On December 11, 1999, Nisbet attempted to transfer his rights in the State Lands
to Northwest Kaolin, Inc. (hereinafter, "NKI"), an Idaho corporation.

27.     Following the attempted transfer by Nisbet, NKI contracted with Alchemy
Ventures, Ltd. (hereinafter, "Alchemy") to develop the property held by NKI under the Leases
with the State of Idaho.

28.     In 2002, a dispute arose between Alchemy and NKI regarding respective
ownership interests in the State Lands.

29.     Plaintiffs Hoodoo and the Brent Thomson Family Trust formed IIM in 2001 to
acquire NKI, including its interest in the State Lands.

COMPLAINT AND DEMAND FOR JURY TRIAL - 6

30.     By a "Contribution Agreement by and among Idaho Industrial Minerals (IIM) and Phillip C. Nisbet," dated October 16, 2001, Nisbet became a member of IIM, contributing to that company "all right title and interest in and to…[certain] Applications for State of Idaho Mineral Leases."

31.     To aid in financing IIM's venture, the Allen and Connie Ball Living Trust became a member of IIM in 2001, and transferred its membership interest to Defendant BV Natural Resources on January 1, 2011.

32.     Defendant BV Natural Resources LLC's Articles of Organization shows that Defendant Ball Ventures LLC manages BV Natural Resources LLC.

33.     Plaintiffs are informed and believe and on that basis allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendant Ball and Defendants BV Natural Resources and Ball Ventures LLC such that any individuality and separateness between the three have ceased.

34.     Adherence to the fiction of the separate existence of Defendant Ball as separate and distinct from Defendants BV Natural Resources and Ball Ventures LLC would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

35.     Plaintiffs are informed and believe and on that basis allege that Defendant Ball and Defendants BV Natural Resources and Ball Ventures LLC have such a unity of interest and operations that separate personalities no longer exist and if the acts are treated as those of the corporations alone, an inequitable result will follow.

A.     **IIM Contracts with Alchemy to Develop the State Lands.**

36.     In August, 2002, in order to resolve disputes regarding ownership of the State Lands, Plaintiff IIM entered into an Assignment Agreement with Alchemy to transfer rights in

the State Lands to Alchemy subject to certain deliverables as conditions subsequent to be completed by Alchemy and to facilitate extraction of mineral resources from the State Lands.

37.     On July 26, 2004, Alchemy became Defendant I-Minerals.

38.     Defendant I-Minerals is a publicly traded company whose sole purpose is extraction of mineral resources from a North Idaho site known as the "Helmer-Bovill Project."

39.     The Assignment Agreement provided for transfer of 1,750,000 shares of I-Minerals common stock to IIM upon completion of four deliverables: (1) Upon execution of the Assignment Agreement, (2) Upon completion of a feasibility study, as that term is defined in the Assignment Agreement, (3) Upon completion of a permitting process, as that term is defined in the Assignment Agreement, and (4) Upon completion of a production plant and first delivery of a commercial product, as those terms are defined in the Assignment Agreement.

40.     Subsequent to executing the Assignment Agreement, Plaintiff IIM and Defendant I-Minerals amended the agreement on four different occasions. Among other things, these amendments had the alleged and purported effect of (a) extending the term of the Assignment Agreement, (b) changing the allocation of common stock delivered upon completion of each deliverable, (c) replacing Section 2.1.4 "On Completion of a Production Plant and First Delivery of Commercial Product" with the new Section 2.1.4 "Upon Completion of the Permitting Process," and (d) striking Section 2.1.5 from the Assignment Agreement.

41.     The Assignment Agreement, as originally drafted, contained no Section 2.1.5.

**B.     I-Minerals Misrepresents the Status of the Wetland Application.**

42.     On May 16, 2008, Defendant I-Minerals submitted a Section 404 Wetland Permit Application (hereinafter, "Wetland Application") to the United States Army Corps of Engineers

(hereinafter, "USACE"), the Idaho Department of Water Resources, and the Idaho Department of Lands.

43.     On September 19, 2008, Michael T. Doherty, a representative of USACE, sent a letter to Defendant Kauffman, disclosing that the Wetland Application lacked sufficient detail to evaluate.

44.     Defendants Kauffman and I-Minerals were given until April 3, 2009, to rectify the deficiencies in the Wetland Application.

45.     Defendants Kauffman and I-Minerals failed to submit the remaining necessary detail to the various agencies in order to complete the Wetland Application by the April 3, 2009, deadline, and subsequently, the Wetland Application was withdrawn.

46.     A Memorandum for Record made by Beth Reinhart, Regulatory Project Manager for USACE, dated April 23, 2009, states that Defendant Kauffman was contacted by telephone to verify the Wetland Application was withdrawn, which Defendant Kauffman confirmed.

47.     Despite the Wetland Application having been withdrawn, Defendants Kauffman, Girling and I-Minerals knowingly issued a press release dated May 4, 2009, wherein these Defendants falsely represented that the Wetland Application was still in process.

48.     During 2009 and 2010, Plaintiff IIM and Defendant I-Minerals entered negotiations regarding further amendments to the Assignment Agreement.  The document containing these amendments was entitled, the "Fourth Amendment and Ratification of the Assignement [sic] Agreement With a Contingent Right of Reverter" (hereinafter, "Fourth Amendment").

49.     During negotiations occurring after the Wetlands Application had been withdrawn, Defendants I-Minerals, Kauffman and Girling repeatedly emphasized the fact that

the Fourth Amendment was necessary to complete the Wetlands Application and obtain required financing, intending for Plaintiff IIM to act on this consideration in executing the Fourth Amendment.

50.    Defendants I-Minerals, Kauffman and Girling further knowingly misrepresented for a deceptive purpose that the Fourth Amendment contained no material alteration, additions or deletions from the original agreement apart from the date of performance and the number of shares in consideration.

51.    Defendants I-Minerals, Kauffman and Girling never informed Plaintiff IIM that the Wetland Application had been withdrawn, despite having knowledge otherwise. This blatant material omission was designed to deceive Plaintiff IIM through misrepresentation for the purpose of inducing Plaintiff IIM to agree to the Fourth Amendment. Plaintiff IIM relied on Defendants I-Minerals, Kauffman and Girling to provide accurate information, as Plaintiff IIM had no other way of obtaining the correct information independently.

52.    Defendants I-Minerals, Kauffman and Girling also concealed that Defendant I-Minerals was unable to find a water source sufficient to operate a production plant on the Lands. This omission was designed to deceive Plaintiff IIM for the purpose of inducing Plaintiff IIM to agree to an amendment to the Assignment Agreement by deception. Plaintiff IIM relied on Defendants I-Minerals, Kauffman and Girling to provide accurate information, as Plaintiff IIM had no other way of obtaining the correct information independently.

53.    Plaintiff IIM, acting within its rights as a counterparty negotiating in good faith with Defendant I-Minerals, relied heavily on their belief that Defendant I-Minerals was continuing to pursue its Wetland Application and water source when Plaintiff IIM agreed to the Fourth Amendment. Disclosure that the Wetland Application had been withdrawn or that there

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

was no water source sufficient to operate a production plant, would have significantly and materially altered the total mix of information made available to Plaintiff IIM. Relying on Defendant I-Mineral's May 4, 2009, press release and Defendants I-Minerals, Kauffman and Girling's material misrepresentations and omissions, Plaintiff IIM believed that it was in its best interest to allow Defendant I-Minerals to extend the expiration of the Assignment Agreement to allow it to complete the Wetland Application, and this fact was a material consideration in Plaintiff IIM's decision to execute the Fourth Amendment.

54.     Effective January 21, 2010, Plaintiff IIM and Defendant I-Minerals signed the Fourth Amendment, extending the term of the Assignment Agreement to 11 years and making its date of expiration August 10, 2013.   Defendant I-Minerals now maintains the Fourth Amendment relieved Defendant I-Minerals of its obligation to build a processing plant, one of the original milestones in the Assignment Agreement.

55.     On September 29, 2010, Conway was appointed as a board member of Defendant I-Minerals.

56.     On February 1, 2011, Conway replaced Defendant Kauffman as president of Defendant I-Minerals.

57.     Conway never informed Plaintiffs that Defendants I-Minerals, Kauffman and Girling abandoned the Wetland Permit.

58.     In the summer of 2012, Plaintiffs Hoodoo and Thomson first learned, through a Freedom of Information Act request, that Defendant I-Minerals abandoned the Wetland Application. Prior to this time, Defendant I-Minerals never disclosed this fact to Plaintiff IIM, and even omitted it from relevant reports it issued to shareholders, such as the National

Instrument 43-101 disclosure it distributed as required for mineral companies listed on Canadian stock exchanges.

59.     Plaintiff IIM should have received return of the Leases under the right of reverter as of August 10, 2011, due to Defendant I-Minerals' failure to meet the required deliverables anticipated by the Assignment Agreement. However, as a consequence of the Fourth Amendment and Defendants Kauffman, Girling, Conway and I-Minerals' unilateral misrepresentations and omissions, Plaintiff IIM did not pursue its right of reverter until 2013.

**C.     I-Minerals Transfers the Leases.**

60.     Section 5.3 of the Assignment Agreement required I-Minerals to maintain the leases "free and clear from any and all liens and encumbrances."

61.     On December 15, 2004, Ball Ventures LLC, an affiliate of Defendant Ball, became a partner in i-minerals Helmer-Bovill, L.L.P., an Idaho limited liability partnership (hereinafter, "Helmer-Bovill").

62.     In 2012, Plaintiff IIM first became aware of a letter between Sharon A. Murray, Minerals Program Manager at the Idaho Department of Lands, and Joseph H. Baird ("Baird"), attorney for Defendant I-Minerals, dated May 26, 2005, that reflected that the Leases had been transferred from Alchemy to Helmer-Bovill. This transfer was a violation of the terms of the Assignment Agreement.

63.     The Transfer Record signed by Scott Nichols, Chief of the Bureau of Surface and Mineral Resources for the Idaho Department of Lands, evidencing the May 26, 2005, transfer represents that, "The assignor is assigning a 100% interest in these ten mineral leases," which evidences a breach of the Assignment Agreement in effect at that time between Plaintiff IIM and

the original assignee of the Leases, Defendant I-Minerals.  IIM was not provided notice of these transfers to Helmer-Bovill when they occurred.

64.     On January 20, 2010, Helmer-Bovill merged with Defendant i-minerals USA, a wholly-owned subsidiary of Defendant I-Minerals, by a Plan of Merger that provided for Helmer-Bovill to transfer the Leases to Defendant i-minerals USA.

65.     Plaintiffs are informed and believe and on that basis allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants I-Minerals and i-minerals USA such that any individuality and separateness between the two have ceased.

66.     Adherence to the fiction of the separate existence of Defendant I-Minerals as separate and distinct from Defendant i-minerals USA would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

67.     Plaintiffs are informed and believe and on that basis allege that Defendants I-Minerals and i-minerals USA have such a unity of interest and operations that separate personalities no longer exist and if the acts described herein are treated as those of Defendant i-minerals USA alone, an inequitable result will follow.

68.     On May 1, 2012, Plaintiff IIM became aware of the transfer of the Leases to Defendant i-minerals USA by reviewing files held by the Department of Lands pursuant to a public records request of that office.  Upon information and belief, these leases were transferred for the purposes of securing indebtedness owed to Ball.

**D.      IIM Seeks to Enforce Its Right of Reverter.**

69.     Section 3 of the Assignment Agreement provides for return of the Leases to Plaintiff IIM upon Defendant I-Minerals' failure to complete the deliverables required of it under

the terms of the Assignment Agreement.

70.     Section 3.2 requires that "IIM must have rejected or re-tendered...at least one block of shares in order to preserve a claim of default and its Contingent Right of Reverter."

71.     On August 10, 2013, eleven years from the date of execution of the Assignment Agreement, the Assignment Agreement expired.

72.     As of that date, Defendant I-Minerals had not completed any of the deliverables required of it beyond execution of the Assignment Agreement in order to extinguish Plaintiff IIM's right of reverter as provided for in the Assignment Agreement.

73.     Under cover of a letter from Baird dated January 22, 2013, Defendant I-Minerals sent to Plaintiff IIM a certificate representing 1.3 million shares of its stock, which it claimed were the "final balance of applicable consideration" per the Assignment Agreement.

74.     On February 1, 2013, Plaintiff IIM, by derivative action of its members Plaintiffs Hoodoo and the Brent Thomson Family Trust, returned the shares to Baird, citing Defendant I-Minerals' failure to achieve the various deliverables and breach of the Assignment Agreement.

75.     On February 6, 2013, in response to Plaintiff IIM's refusal to accept the shares, Baird returned the shares to Plaintiff IIM through its counsel, stating that Defendant I-Minerals "has no authority to receive and no responsibility to hold the shares...."

76.     On November 6, 2013, Plaintiff IIM returned the shares to the transfer agent of Defendant I-Minerals.

77.     Plaintiff IIM has never accepted the stock shares offered by Defendant I-Minerals.

E.      **I-Minerals Breaches the Assignment Agreement.**

78.     Section 5.4 of the Assignment Agreement states, in pertinent part, "ALY shall provide IIM with copies of any correspondence sent to, or received from, the State of Idaho and its various agencies."

79.     On October 29, 2004, Baird sent a letter to Sharon Murray of the Idaho Department of Lands regarding recording the Leases in the name of Defendant i-minerals USA. In violation of Section 5.4 of the Assignment Agreement, Plaintiff IIM was never provided copies of this letter.

80.     On November 23, 2004, Ula Chadd of the Idaho Department of Lands responded to Baird's correspondence requesting that Baird complete "Name Change" forms to accomplish the transfer. In violation of Section 5.4 of the Assignment Agreement, Plaintiff IIM was never provided copies of this letter.

81.     On March 3, 2011, Melinda Doan of the Idaho Department of Lands sent a letter to Defendant i-minerals USA regarding a transfer of the Leases from Helmer-Bovill to Defendant i-minerals USA. In violation of Section 5.4 of the Assignment Agreement, Plaintiff IIM was never provided copies of this letter.

82.     Section 10.1 of the Assignment Agreement provides that Defendant I-Minerals "shall not be deemed to be in default hereunder until IIM shall first have given to [I-Minerals] written notice of the alleged default, specifying with particularity the circumstances of the default and, if applicable, the amount of shares which IIM claims is due and payable by [I-Minerals]."

83.     On February 1, 2013, Plaintiffs Hoodoo and Thomson, acting derivatively on behalf of Plaintiff IIM, sent a letter to Barry Girling, a director of Defendant I-Minerals,

notifying Defendant I-Minerals that it had failed to complete required deliverables under the Assignment Agreement. This letter also formally invoked the right of reverter and demanded return of the Leases.

84.    In violation of the right of reverter clause in the Assignment Agreement, Defendant I-Minerals refused to return the Leases as required.

85.    Subsequently, on February 21, 2013, I-Minerals issued a press release stating that it had earned a 100% interest in the Leases under the Assignment Agreement.

86.    I-Minerals restated this false claim in its consolidated financial statements for the six months ended October 31, 2013, stating, "[I-Minerals] has investigated title to all of its mineral properties and, to the best of its knowledge, title to all of its properties is in good standing."

87.    Management's Discussion and Analysis of those financial statements states,

> On January 23, 2013 [I-Minerals] delivered 1.3 million shares to [IIM]. The shares represent the final payment under the underlying property agreement and [I-Minerals] now owns outright the State of Idaho Mineral Leases that comprise the Helmer-Bovill property. These leases have all been renewed for a second 10 year term leaving [I-Minerals] well positioned for the future development of the property.

**F.    I-Minerals Misrepresents Its Progress With the Leases**

88.    In 2012, I-Minerals contracted with Wendt Pottery of Lewiston, Idaho (hereinafter, "Wendt") to process tailings derived from the Lands.

89.    I-Minerals' agreement with Wendt provided that I-Minerals would provide certain equipment to Wendt in order to grind the tailings provided to Wendt by I-Minerals.

90.    I-Minerals never delivered the specified equipment to Wendt.

COMPLAINT AND DEMAND FOR JURY TRIAL - 16

91.     Upon to delivery to Wendt, the tailings from I-Minerals had not been properly screened, and therefore contained clay, roots and branches. Wendt refused to accept delivery of the tailings and did not pay I-Minerals for the substandard delivery.

92.     On October 22, 2012, after Wendt's refusal of delivery of the tailings, I-Minerals issued a press release stating that it had achieved production on the Leases with a sale of 30,000 tons of tailings to Wendt.

**G.      Independent Facts Concerning Allen Ball.**

93.     Defendant Ball, by way of the Allen and Connie Ball Living Trust and subsequently by way of Defendant BV Natural Resources, has been a shareholder in Plaintiff IIM since December 28, 2001.

94.     Allen Ball has been a corporate director of Defendant I-Minerals since the time it was operating as Alchemy.

95.     As a member of IIM, Ball is a fiduciary and owes fiduciary duties of loyalty and duty of care to Plaintiffs.

96.     On March 2, 2005, Ball Ventures LLC filed a report with the Toronto Stock Exchange. It states that Ball Ventures LLC purchased 2,000,000 units of Helmer-Bovill. Each unit is convertible into five shares of Defendant I-Minerals on or before March 31, 2007.

97.     On March 25, 2005, Defendant BV Natural Resources was formed.

98.     On July 21, 2008, Defendant I-Minerals filed a 51-102F3 Material Change Report in which it announced the private placement of 1,510,032 units yielding $906,019.00. Defendant Ball subscribed to 100,000 units.

99.     On July 25, 2008, National Instrument 62-103, Appendix B, Early Warning Report was filed by Defendant BV Natural Resources. It was signed by "Allen Ball, President,

Ball Ventures, LLC." This report does not disclose transfer of the Leases, nor does it disclose that Defendant Ball did not have consent from Plaintiff IIM to transfer the Leases.

100. On October 9, 2008, Ball Ventures LLC, filed an Early Warning Report with the Toronto Stock Exchange. This report documents conversion of Helmer-Bovill L.L.P. units to Defendant I-Minerals shares, giving Defendant Ball ownership of 9,163,370 shares.

101. On February 1, 2010, Defendant I-Minerals announced 8,270,000 Series A units of stock at $0.25 were sold through a brokered private placement. This transaction involved Defendant Ball.

102. On January 1, 2011, Defendant Ball assigned his membership interest in Plaintiff IIM to Defendant BV Natural Resources, which in turn is managed by Ball Ventures LLC.

103. On April 29, 2011, Defendant I-Minerals announced the sale of 8,000,000 units of stock. Ball Ventures subscribed for a total of 5,220,000 of these units at $0.25.

104. On June 15, 2011, Defendant I-Minerals announced an intention to amend the terms of certain outstanding share purchase warrants issued pursuant to a convertible debenture offering. Additionally, Defendant I-Minerals sought approval of the debenture holders for the extension of the outstanding debentures. This announcement involved 10,985,285 warrants that were issued to Ball Ventures, which is in addition to the common stock Defendant Ball received or purchased since he became Plaintiff IIM's representative to Defendant I-Minerals' board of directors.

105. On January 13, 2012, Defendant I-Minerals announced share purchase warrants issued pursuant to an offering of convertible debentures. Defendant I-Minerals sought permission from the exchange to lower the price of this block of 642,857 warrants from $0.35 to $0.25. This transaction involved Defendant Ball.

COMPLAINT AND DEMAND FOR JURY TRIAL - 18

106.   On September 24, 2012, Defendant I-Minerals announced that they negotiated a loan agreement with companies controlled by their president, Defendant Ball, where $1,000,000 was to be advanced to the Defendant I-Minerals as an unsecured loan accruing interest at the rate of 9.5% per annum compounded semi-annually from the date of each advance. In exchange, Defendant I-Minerals issued 80,000 common shares to the Defendant Ball for each $100,000 advanced, as "bonus shares."

107.   Through Defendant Ball's role as a director of Defendant I-Minerals, Defendant Ball has participated in, ratified, instigated, and/or conspired to misrepresent and or to intentionally failed to disclose material information to Plaintiff IIM related to Fourth Amendment of the Assignment Agreement, and the transfer of the Lands from Plaintiff IIM to Defendant i-minerals USA.

108.   Defendant Ball has personally benefitted from Defendant I-Minerals' purposeful misrepresentations and omissions because he has used his position to acquire large blocks of Defendant I-Minerals' stock outside of Plaintiff IIM at a reduced rate, thereby causing Plaintiffs' damages in the form of diluting their interests in Defendant I-Minerals' stock.

## CLAIMS FOR RELIEF

### COUNT ONE
(Breach of Contract as to I-Minerals and i-minerals USA)

109.   Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

110.   Defendant I-Minerals is in breach of the Assignment Agreement between it and Plaintiff IIM because:   (1) a contract exists between the parties; (2) Defendant I-Minerals breached said contract; (3) that breach caused Plaintiff IIM to suffer damages; (4) the amount of which will be proven at trial.

COMPLAINT AND DEMAND FOR JURY TRIAL - 19

111.   Plaintiff IIM has performed all conditions precedent to performance of the Assignment Agreement.

112.   Defendant I-Minerals has a duty under the Assignment Agreement to return the Leases if, upon expiration of the Assignment Agreement, it has not completed the deliverables required under the Assignment Agreement.

113.   As of the date of this Complaint, Defendant I-Minerals has failed to complete the required deliverables under the Assignment Agreement. Despite Plaintiff IIM following the procedures outlined in the Assignment Agreement by providing adequate notice to Defendant I-Minerals that it has not provided proper consideration and by making a formal demand for return of the Leases, Defendant I-Minerals has refused to return the Leases to Plaintiff IIM as is required.

114.   Section 5.4 of the Assignment Agreement requires Defendant I-Minerals to provide Plaintiff IIM with copies of any correspondence sent to, or received from, the State of Idaho and its various agencies.

115.   In violation of Section 5.4 of the Assignment Agreement, Plaintiff IIM was never provided copies of letters dated October 29, 2004, November 23, 2004 and March 3, 2011, sent to and received from the State of Idaho Department of Lands related to the transfer of the Leases from Helmer-Bovill to Defendant i-minerals USA.

116.   The breaches of the Assignment Agreement have damaged Plaintiff IIM in an amount to be determined at trial.

**COUNT TWO**
(Fraud in the Inducement and Constructive Fraud – Kauffman, Ball, Girling, Conway, I-Minerals and i-minerals USA)

117.    Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

118.    Defendants Kauffman, Ball, Girling, Conway and I-Minerals engaged in purposeful and deceitful conduct designed to induce Plaintiff IIM to sign the Fourth Amendment when they: (1) represented to Plaintiff IIM that the Fourth Amendment was necessary in order for Defendant I-Minerals to receive financing; (2) which was a false representation; and (3) omitted that the Wetlands Application had been withdrawn and concealed that they were unable to find a water source sufficient to operate a production plant on the Lands; (3) both of which were material to the deal between Plaintiff IIM and Defendant I-Minerals; (4) that Defendant Kauffman, as president of Defendant I-Minerals, knew the falsity of; (5) that Defendant Kauffman intended should be acted on by Plaintiff IIM in the manner reasonably contemplated; (6) that Plaintiff IIM was unaware of the falsity of; (7) while Plaintiff IIM relied on Defendants Kauffman and I-Minerals to provide truthful information; (8) and on which Plaintiff IIM had a right to rely. By inducing Plaintiff IIM to sign the Fourth Amendment, Defendants Kauffman and I-Minerals damaged Plaintiff IIM in an amount to be determined at trial.

**COUNT THREE**
(Violation of Section 10(b) of the 1934 Act and Rule 10b-5 against all Defendants)

119.    Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

120.    During the relevant times, Defendants disseminated or approved the false statements specified above, the truth of which was known by them and recklessly disregarded. These statements were misleading and contained misrepresentations. Defendants failed to

COMPLAINT AND DEMAND FOR JURY TRIAL - 21

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

121.    Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Plaintiffs and others similarly situated in connection with purchase of Defendant I-Minerals' publicly traded securities.

122.    Plaintiffs have suffered damages in that, in reliance upon the integrity of the statements made, they paid artificially inflated prices for Defendant I-Minerals' publicly traded securities. Plaintiffs would not have purchased the publicly traded securities at the prices they paid, or at all, or entered the Fourth Amendment, if they had been aware that the market prices and value of the Fourth Amendment had been artificially and falsely inflated by the Defendants' misleading statements.

123.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchases of the shares provided in the Fourth Amendment as publicly traded securities.

### COUNT FOUR
(Violation of Section 20(a) of the 1934 Act as to Ball)

124.    Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

125.    Defendant Ball acted as a controlling person of Defendant I-Minerals within the meaning of Section 20(a) of the 1934 Act. By reason of his position as director of Defendant I-Minerals and his ownership of Defendant I-Minerals' stock, Ball had direct and supervisory

involvement in day-to-day operations of the corporation, and was provided with or had unlimited access to copies of corporation's press releases, public filings, or other statements alleged to be misleading. By reason of such control, Defendant Ball is liable pursuant to Section 20(a) of the 1934 Act.

<strong>COUNT FIVE</strong>
(Breach of Fiduciary Duties as to Ball, I-Minerals and i-minerals USA)

126.    Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

127.    That Defendant Ball, serving as a director on Defendant I-Minerals' board of directors, was a fiduciary and owed Plaintiffs the fiduciary duties of loyalty and duty of care.

128.    That Defendant I-Minerals conspired with Defendant Ball to breach Defendant Ball's fiduciary duties of loyalty and care to the Plaintiffs.

129.    That as a result thereof, Plaintiffs herein were proximately damaged in an amount to be proven at trial.

<strong>COUNT SIX</strong>
(Violation of Section 20(a) of the 1934 Act as to Kauffman)

130.    Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

131.    Defendant Kauffman acted as a controlling person of Defendant I-Minerals within the meaning of Section 20(a) of the 1934 Act.  By reason of his position as president of Defendant I-Minerals and his personal involvement and representation of Defendant I-Minerals as its agent during negotiations of the Fourth Amendment, Defendant Kauffman had direct and supervisory involvement in day-to-day operations of the corporation, and was provided with or had unlimited access to copies of corporation's press releases, public filings, or other statements

alleged to be misleading.  By reason of such control, Defendant Kauffman is liable pursuant to Section 20(a) of the 1934 Act.

## COUNT SEVEN
(Violation of Section 20(a) of the 1934 Act as to Conway)

132.    Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

133.    Defendant Conway acted as a controlling person of Defendant I-Minerals within the meaning of Section 20(a) of the 1934 Act.  By reason of his position as president of Defendant I-Minerals and his personal involvement and representation of Defendant I-Minerals as its agent in the course of its negotiations with IIM, Defendant Conway had direct and supervisory involvement in day-to-day operations of the corporation, and was provided with or had unlimited access to copies of corporation's press releases, public filings, or other statements alleged to be misleading.  By reason of such control, Defendant Conway is liable pursuant to Section 20(a) of the 1934 Act.

## COUNT EIGHT
(Violation of Section 20(a) of the 1934 Act as to Girling)

134.    Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

135.    Defendant Girling acted as a controlling person of Defendant I-Minerals within the meaning of Section 20(a) of the 1934 Act.  By reason of his position as a director of Defendant I-Minerals and his personal involvement and representation of Defendant I-Minerals as its agent during negotiations of the Fourth Amendment, Defendant Girling had direct and supervisory involvement in day-to-day operations of the corporation, and was provided with or had unlimited access to copies of corporation's press releases, public filings, or other statements

alleged to be misleading. By reason of such control, Defendant Girling is liable pursuant to Section 20(a) of the 1934 Act.

## COUNT NINE
### (Specific Performance)

136. Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

137. Section 3 of the Assignment Agreement provides for return of the Leases to Plaintiff IIM upon Defendant I-Minerals' failure to complete the deliverables required of it under the terms of the Assignment Agreement.

138. Section 3.2 requires that "IIM must have rejected or re-tendered…at least one block of shares in order to preserve a claim of default and its Contingent Right of Reverter."

139. On August 10, 2013, 11 years from the date of execution of the Fourth Amendment, the Assignment Agreement expired.

140. As of that date, Defendant I-Minerals had not completed any of the deliverables required of it, beyond execution of the Assignment Agreement, in order to extinguish Plaintiff IIM's right of reverter as provided for in the Assignment Agreement.

141. Under cover of a letter from Baird dated January 22, 2013, Defendant I-Minerals sent to Plaintiff IIM a certificate representing 1.3 million shares of its stock, which it claimed was the "final balance of applicable consideration" per the Assignment Agreement.

142. On February 2, 2013, Plaintiff IIM, by derivative action of its members Plaintiffs Hoodoo and Thomson, returned the shares to Baird, citing Defendant I-Minerals' failure to achieve the various deliverables and breach of the Assignment Agreement.

143.    On February 6, 2013, in response to Plaintiff IIM's refusal to accept the shares, Baird returned the shares to Plaintiff IIM through its counsel, stating that Defendant I-Minerals "has no authority to receive and no responsibility to hold the shares...."

144.    On November 6, 2013, Plaintiff IIM returned the shares to the transfer agent of Defendant I-Minerals.

145.    Plaintiff IIM has never accepted the stock shares offered by Defendant I-Minerals.

146.    Plaintiffs have no plain, speedy and adequate remedy at law to protect their contractual rights in this matter other than specific performance of the Assignment Agreement.

147.     Plaintiffs will suffer irreparable harm if this Court does not issue an order requiring Defendants to comply with the Assignment Agreement.

148.    Plaintiffs are entitled to specific performance of the terms, conditions, and provisions of the Assignment Agreement, by court decree, among other things, ordering Defendants to complete conveyance of the Leases, pursuant to Plaintiff IIM's right of reverter.

## COUNT TEN
### (Punitive Damages)

149.    Plaintiffs restate the allegations contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

150.    Plaintiffs reserve the right to seek punitive damages against Defendants upon a showing of evidence pursuant to Idaho Code § 6-1604.

## ATTORNEY FEES

Plaintiffs have been required to obtain the assistance of counsel, Arkoosh Law Offices, to assist in the prosecution of this matter, and have agreed to pay said attorneys a reasonable fee. Plaintiffs are entitled to recover their reasonable costs and attorney fees incurred in the

prosecution of this matter pursuant to Federal Rule of Civil Procedure 54 and/or Idaho Code Sections 12-120, 12-121, or other applicable law.

**JURY DEMAND**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request this Court's judgment against Defendants as follows:

1.      That per Plaintiffs' First Claim for Relief (Breach of Contract), Plaintiffs are entitled to recover damages in an amount to be proven at trial, or, in the alternative, an injunction requiring Defendants to return the Leases and other property as required under the Assignment Agreement with Contingent Right of Reverter to Plaintiff IIM.

2.      That per Plaintiffs' Second Claim for Relief (Fraud in the Inducement) and Third Claim for Relief (Violation of Section 10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5 against all Defendants), Plaintiffs are entitled to recover damages in an amount to be proven at trial.

3.      As to Defendant Ball, individually, on the Fourth Claim for Relief (Violation of Section 20(a) of the Securities Exchange Act of 1934 as to Ball) and Fifth Claim for Relief (Breach of Fiduciary Duty as to Ball), Plaintiffs are entitled to recover damages in an amount to be proven at trial.

4.      As to Defendant Kauffman, individually, on the Sixth Claim for Relief (Violation of Section 20(a) of the Securities Exchange Act of 1934), Plaintiffs are entitled to recover damages in an amount to be proven at trial.

5.      That this Court immediately issue an order for specific performance requiring Defendants to return the Leases to Plaintiff IIM.

COMPLAINT AND DEMAND FOR JURY TRIAL - 27

6.     For such further and other relief as the Court deems just and necessary.

DATED this 4th day of March, 2014.

ARKOOSH LAW OFFICES

_____

C. Tom Arkoosh, of the firm
*Attorneys for Plaintiffs*

COMPLAINT AND DEMAND FOR JURY TRIAL - 28